# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| DAVID MICHAUD, TIMOTHY BURKE, JAMES DOMSIC, PATRICK FETTERMAN, WILLIAM HASLINGER, ROBERT ISENBERG, KAREN SANDY, THOMAS SCHULTE, MELVILLE SMITH, and MARK G. STOBBELAAR, <br><br> Plaintiffs, <br><br> v. <br><br> PLEX SYSTEMS, INC. and PLEX SYSTEMS HOLDINGS, INC., <br><br> Defendants. | Case No. <br><br> **Demand for Jury Trial** |

## COMPLAINT AT LAW

Plaintiffs, David Michaud, Timothy Burke, James Domsic, Patrick Fetterman, William Haslinger, Robert Isenberg, Karen Sandy, Thomas Schulte, Melville Smith, and Mark G. Stobbelaar, ("Plaintiffs"), by and through their attorneys, Maddin Hauser Roth & Heller, P.C. and Hart, McLaughlin & Eldridge, LLC, complaining of Defendants, Plex Systems, Inc. ("Plex Systems") and Plex Systems Holdings, Inc. ("Plex Holdings" and, collectively with Plex Systems, "Plex"), state as follows:

### INTRODUCTION

1.  Plex was founded in 1995 as a provider of custom manufacturing software for manufacturing companies. Over time, Plex transitioned to a provider of cloud-based manufacturing software. By early 2021, what was once a small IT start-up had grown into "the leading pure software-as-a-service, cloud-native smart manufacturing platform operating at

scale" and a provider of "leading applications in manufacturing execution, supply chain visibility, and quality management across discrete, hybrid, and process industry segments."[1]

2. Over time, Plex's software services gained widespread adoption throughout automotive industry supply chains. Plex's website lists at least 20 "customer success" stories of companies within the automotive industry.[2] Plex's software helped these companies, and others, automate automotive component part production, both domestically and abroad.

3. Francisco Partners ("Francisco"), a private equity firm headquartered in San Francisco, acquired a significant interest in Plex in June 2012.

4. At all times relevant hereto, Francisco was Plex's single largest private equity investor and instrumental in all major business and financial decisions. Francisco was a driving force responsible for Plex's increased California operations, sales, strategic acquisitions, and Plex's ultimate acquisition by Rockwell Automation, Inc. ("Rockwell").

5. Upon information and belief, by early 2020, and possibly prior thereto, Plex and Francisco, engaged in ongoing negotiations with Rockwell, "the world's largest company dedicated to industrial automation and digital transformation[3]," for purposes of Rockwell's acquisition of Plex.

6. Negotiations between Rockwell and Plex ultimately concluded with Rockwell agreeing to acquire Plex in exchange for $2.2 billion in cash. Rockwell's acquisition of Plex was announced on June 25, 2021, with an initial closing date of September 30, 2021.

---

[1] *Rockwell Automation to Expand Industrial Cloud Software Offering with Acquisition of Plex Systems,* https://www.plex.com/company/newsroom/rockwell-automation-acquisition-plex
[2] *Plex Automotive Customers,* https://www.plex.com/company/customers/automotive
[3] *See 1, infra.*

7. Rockwell is a publicly traded corporation (NYSE: ROK) with a market capitalization of over $40.4 billion[4].

8. At all times relevant hereto, Plex was a private corporation with no public share offerings and with limited opportunities for shareholders to liquidate their holdings.

9. The sale of Plex to Rockwell should have resulted in a substantial profit for Plex's shareholders. However, in the leadup to the acquisition, Plex and Francisco engaged in a deliberate and cynical scheme to broaden their share of the sale's proceeds at the expense of individual shareholders. This scheme served to maximize profits of Francisco and Plex's current directors through active omissions and material misrepresentations made to shareholders about Plex's valuation and ongoing acquisitional discussions with Rockwell.

10. On March 10, 2021, Don Clark, Plex's Chief Financial Officer, e-mailed shareholders to announce a tender offer for outstanding common stock shares. A tender offer is a corporate solicitation to its shareholders of the opportunity to sell their stock to the company at a specific price during a specific time period. Plex's tender offer was launched on March 11, 2021, and remained open until April 8, 2021.

11. Plex did not regularly make tender offers. As of March 11, 2021, Plex had not made a tender offer in at least five years. Because Plex was not a publicly traded company, there was little or no way for Plaintiffs to sell their shares of stock. This represented the first opportunity in years for Plaintiffs to monetize their holdings.

12. When the tender offer was made to Plaintiffs, they had no idea of the discussions between Rockwell and Plex.

---

[4] All stock information current as of December 30, 2021

13. Instead of disclosing late-stage acquisition discussions, Plex affirmatively and falsely informed shareholders "[*t*]*he Company is not the subject of any acquisition offers and is not seeking or negotiating for further investment at this time*." (emphasis added). This was false.

14. Upon information and belief, Plex and Rockwell had been in acquisition talks since late 2020.

15. Plex informed shareholders there were 234,501,126.8911 total shares of Plex stock. For purposes of the tender offer, Plex valued each share of common stock at $3.21. As a result, Plex informed shareholders its valuation was approximately $750 million.

16. Unknown to shareholders, but known to Plex's leadership, was that Plex's actual value was more than $2 billion and that its acquisition by Rockwell was imminent.

17. Plex warned shareholders against conducting independent research into whether the tender offer was fair value per share. To this end, Plex represented that "[e]ligible shareholders *should not rely on any portion of the Company's website or any other information available regarding the Company* other than the information set forth in this Offer to Terminate or Purchase or the Disclosure Notice…in deciding whether to tender the Eligible Options or sell the Eligible Shares in the Offer." (emphasis added).

18. In reliance on the information and representations contained in the Offer to Terminate or Purchase and the Disclosure Notice Plaintiffs to this action elected to accept the tender offer and sell their shares back to Plex.

19. Plaintiffs each expected Plex was being honest and forthright as to the value of their shares at the time they sold them and relied on the representations Plex made in documents supporting the tender offer.

20. Plex's tender offer contained a series of materially false and misleading statements expressly targeted at separating Plaintiffs from their shares at an artificially low price.

21. Rockwell's acquisition of Plex was completed on September 1, 2021 for $2.2 billion.

22. In connection with the acquisition, all Plex shareholders were paid $9.80 per share; $6.59 per share more than what Plaintiffs were offered just several months earlier.

23. Plaintiffs in this matter seek to be made whole and provided the stock sale proceeds that would have been received had they been fully and honestly apprised of the negotiations between Rockwell and Plex at the time of the tender offer.

## THE PARTIES

24. David Michaud ("Michaud") is a resident of Danville, California and sold 100,000 shares of Plex common stock with a closing date of April 15, 2021. Michaud received all documents related to the tender offer while in California, reviewed all documents related to the tender offer while in California, agreed to sell his shares of Plex common stock for $3.21 per share while in California and the funds received for his shares were sent to a California bank.

25. Plaintiff Timothy Burke is a resident of Michigan and sold 22,917 shares of Plex common stock with a closing date of April 15, 2021.

26. Plaintiff James Domsic a resident of Michigan and sold 3,333 shares of Plex common stock with a closing date of April 15, 2021.

27. Plaintiff Patrick Fetterman is a resident of Michigan and sold 343,771 shares of Plex common stock with a closing date of April 15, 2021.

28. Plaintiff William Haslinger is a resident of Michigan and sold 8,958 shares of Plex common stock with a closing date of April 15, 2021.

29. Plaintiff Robert Isenberg is a resident of Michigan and sold 13,750 shares of Plex common stock with a closing date of April 15, 2021.

30. Plaintiff Karen Sandy is a resident of Michigan and sold 16,250 shares of Plex common stock with a closing date of April 15, 2021.

31. Plaintiff Thomas Schulte is a resident of the State of Louisiana and sold 50,000 shares of Plex common stock with a closing date of April 15, 2021.

32. Plaintiff Melville Smith is a resident of Tennessee and sold 10,000 shares of Plex common stock with a closing date of April 15, 2021.

33. Plaintiff Mark G. Stobbelaar is a resident of Michigan and sold 50,000 shares of Plex common stock with a closing date of April 15, 2021.

34. Plaintiffs to this action collectively sold 618,979 shares of Plex common stock.

35. Defendant Plex Systems, Inc., is a Delaware Corporation with is principal place of business in Troy, Michigan.

36. Defendant Plex Systems Holdings, Inc., is a Delaware Corporation with its principal place of business in Troy, Michigan.

37. Upon information and belief, Defendants acted in all respects pertinent to this action as the agent of the other Defendant, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each Defendant are legally attributable to each of the other Defendants.

## JURISDICTION AND VENUE

38. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this civil action arises under the laws of the United States.

39. This Court has personal jurisdiction over Defendants by virtue of sufficient minimum contacts with the Northern District of California detailed herein.

40. At all times relevant hereto, Defendants maintained an office in Irvine, California.

41. Francisco Partners, a major Plex shareholder with significant involvement in the tender offer, is headquartered in San Francisco, California.

42. All Defendants to this matter are currently litigating another civil action with similar claims concerning the same general sequence of events in the Northern District of California. All Defendants have waived personal jurisdiction in that matter.[5]

43. Plex Systems filed a Statement and Designation by Foreign Corporation with the California Secretary of State which elects a California-based agent for service of process.

44. A substantial part of the events, misstatements and omissions giving rise to this claim occurred in the Northern District of California. These events include, but are not limited to, discussions about the tender offer by directors, executives, and officers of Defendants; receipt, review, and execution of documents governing the tender offer by Plaintiff, David Michaud; and payments made to Plaintiff, David Michaud, in exchange for his sale of shares.

45. Venue is also proper as to all parties within this judicial district because a substantial part of the events, misstatements, and omissions giving rise to Plaintiffs' claims occurred here.

## BACKGROUND

I. **Plex Becomes a Billion Dollar Corporation Through Automation of Manufacturing Jobs**

---

[5] *Blessing, et al. v. Plex Systems, Inc., et al*. Case No. 4:21-cv-5951-JPH

46. Plex claims it was "born on the shop floor of a factory making axels, pinion gears and drive shafts" by "the workers who kept the presses running and made sure parts matched customer specs.[6]"

47. Recently, Plex boasted a "Smart Manufacturing Platform" that "connects people, systems, machines and supply chains, automates business processes, tracks data from the shop floor to the top floor, and delivers analytics for unmatched visibility, quality and control."

48. Stripping away the fairytale marketing, Plex became a billion-dollar company by automating many of the manufacturing jobs previously held by American blue-collar workers.

49. Plexus Systems was founded in Michigan in 1995, and over time became a software-as-a-service (Saas) business. Plex began to experience growth in the early 2000's as more manufacturing processes became automated and less reliant upon human operations. As employers increasingly sought to trim bottom lines by eliminating human headcounts, Plex was there to supply the software necessary to do it.

50. Plex's software made major inroads within the automotive industry. Across the automotive supply-chain, dozens of manufacturers turned to Plex to automate the industrial processes necessary to reduce production expenses and manufacture more automotive parts with less human labor.

51. By 2006, Plex sold a majority interest in the company to Apax Partner, a private equity investment group. In 2012, they were acquired by Francisco Partners, another private equity investment group. Thereafter, Plex continued to accept outside investment from various other financial institutions, including Accel Partners and T. Rowe Price.

52. Upon information and belief, Plex was nearly acquired for $725 million in 2017.

---

[6] *Plex: About Us,* https://www.plex.com/company

53. In July 2018, Plex acquired DATTUS, Inc., a "leader in Industrial Internet of Things (IIoT) connectivity technologies" to expand its increasing reach into machine connectivity and manufacturing atomization[7].

54. On or about November 30, 2020, Plex alleges to have received a valuation of $750 million from a third-party. This valuation suggests Plex grew less than 1% annually in the approximately four years since they were nearly acquired for $725 million.

55. Upon information and belief, Plex's corporate revenues and profitability increased significantly from 2017 to 2021.

### II.   Plex Misstates its Valuation and Acquisition Strategy In Connection with Tender Offer to Shareholders

56. On March 10, 2021, Don Clark, Plex's Chief Financial Officer, emailed shareholders to advise "Plex will launch a tender offer for its outstanding common shares." The tender offer was open to all persons holding common shares of Plex stock on or before February 3, 2021. This was the first such tender offer in over five years and launched the following day. The tender offer was administrated through NASDAQ Private Markets and ran through April 8, 2021.

---------- Forwarded message ---------
From: **Clarke, Don** <DClarke@plex.com>
Date: Wed, Mar 10, 2021 at 4:46 PM
Subject: Plex Tender Offer
To: Clarke, Don <DClarke@plex.com>

Dear Shareholder,

This is to let you know that Plex will launch a tender offer for its outstanding common shares. We have retained NASDAQ Private Markets (NPM) to administrate this tender offer.

NPM will be sending an email to your email account with instructions on how to participate, if you so choose, along with links to their system which contains all necessary information, disclosures and forms.

(Screenshot of Initial Correspondence Advising Plaintiffs of Tender Offer)

57. Plex offered to buy or terminate shares for $3.21 each.

---

[7] *Plex Systems Acquires DATTUS to Accelerate IIoT Adoption*, https://www.plex.com/company/newsroom/dattus-acquisition-to-accelerate-iiot-adoption

9

58. Information included within the tender offer informed shareholders there were approximately 234,501,126 total shares, making total enterprise value approximately $750 million.

59. Shareholders were advised that Plex's tender offer was made, at least in part, because the company wanted to clean up its capitalization table.

60. When the tender offer was launched on March 11, 2021, supporting documents were available to shareholders. Within these documents, Plex represented *"[t]he Company is not the subject of any acquisition offers and is not seeking or negotiating for further investment at this time*." (emphasis added).

61. Plex warned eligible shareholders against conducting research above and beyond the documents provided by the company.

62. Shareholders were advised they "should not rely on any portion of the Company's website or any other information available regarding the Company other than the information set forth in this Offer to Terminate or Purchase or the Disclosure Notice…in deciding whether to tender the Eligible Options or sell the Eligible Shares in the Offer."

63. Plex reasonably expected shareholders would rely upon the representations made in connection with its tender offer.

64. Plex made these statements in disregard of the most current factual information, namely, its ongoing acquisitional discussions with Rockwell.

65. Defendants intended that Plaintiffs review the above representations that they rely upon them in choosing to sell their shares of Plex during the tender offer period.

66. Plaintiffs reviewed the above representations and did, in fact, rely upon them in choosing to sell their shares of Plex during the tender offer period.

67. The tender offer period expired at midnight eastern standard time on April 8, 2021. All tenders closed by April 15, 2021.

### III. Lengthy Negotiations Result in Rockwell's Acquisition of Plex

68. At no point during the tender offer period were shareholders advised that Plex had been engaged in ongoing talks for Rockwell to purchase the company, let alone for multiple billions of dollars – cash.

69. Upon information and belief, acquisition talks between Rockwell and Plex had been ongoing since at least late 2020.

70. Upon further information and belief, Plex senior executives were required to sign a non-disclosure agreement (NDA) regarding Plex's potential sale to Rockwell prior to March 11, 2021.

71. When the tender offer was made on March 11, 2021, acquisition discussions with Rockwell had progressed to their final stages.

72. As of March 11, 2021, Plex executives knew each share was worth significantly more than the $3.21 per share offered to shareholders.

73. At no point during negotiations with Rockwell did Plex offer to sell for the $750 million valuation made in connection with the tender offer.

74. As of March 11, 2021, Plex knew the company was the subject of an acquisition offer by Rockwell.

75. On June 21, 2021, Rockwell and Plex both announced the former's acquisition of the latter for $2.22 billion with the acquisition set to close on September 30, 2021.

76. On June 25, 2021, the companies revealed during an investor call that Rockwell had sought to acquire Plex for "quite some time."

77. On September 1, 2021, Rockwell completed its acquisition of Plex. Plex shareholders as of that date received or will receive $9.97 per share; $6.76 more per share than what was paid to those accepting Plex's tender offer just several months earlier.

78. Plex did not triple in value between March 11, 2021 and September 1, 2021.

79. Plex's executives and directors, including Don Clark, held more Plex shares than they otherwise would have as a result of Plaintiffs' participation in the tender offer. As a result, Plex's directors and officers financially benefitted from Plaintiffs' participation in the tender offer.

80. As a condition of Rockwell's acquisition of Plex, $35 million was held back for "indemnity obligations that may arise in the event a current or former stockholder… makes a claim with respect to a voluntary tender offer made by [Plex] in March 2021 which expired on April 8, 2021."[8]

## COUNT I
### Violation of § 10(b) and Rule 10b-5 of the Securities Exchange Act

81. Each of the foregoing paragraphs are incorporated herein as if fully restated.

82. At all times relevant hereto, 17 C.F.R. § 240, *et seq*., otherwise known as the Securities Exchange Act of 1934 ("The Act"), was in full force and effect.

83. Section 10(b) of The Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security… any manipulative or deceptive device or contrivance."

84. Rule 10b-5 of The Act imposes liability for "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

---

[8] *Plex Systems Holdings, Inc. Confidential Information Statement, Notice of Action by Written Consent and Notice of Appraisal Rights Concerning the Merger of Rockwell Automation US Holdings, Inc. and Plex Systems Holdings, Inc.*, p. 10.

85. Plex made material misrepresentations and omissions in representing the company's valuation and indicating the company was not the subject of any acquisition offers and was not negotiating further investment.

86. Plex knew these material misrepresentations and omissions were false at the time they were made.

87. Plex's material misrepresentations and/or omissions were made in connection with the purchase and sale of a security; specifically shares of company stock sold during its 2021 tender offer.

88. Plaintiffs relied upon Plex's material misrepresentations and omissions when accepting the tender offer and selling their shares of Plex back to the company.

89. Plaintiffs suffered economic loss as a result of Plex's material misrepresentations and omissions.

90. Plex's material misrepresentations and omissions are and were a substantial cause of Plaintiff's economic harms and losses.

## COUNT II
### Violation of Securities Exchange Act § 14(e)

91. Each of the foregoing paragraphs are incorporated herein as if fully restated.

92. At all times relevant hereto, section 14(e) of The Act regulates unlawful tender offer practices and was in full force and effect.

93. Plex made material misrepresentations and omissions in representing the company's valuation, that the company was not the subject of any acquisition offers, and was not negotiating further investment.

94. Plex's misrepresentation or nondisclosure were designed to deceive or defraud Plaintiffs by artificially affecting price of their shares in advance of acquisition by Rockwell.

95. Plex knew these statements were false at the time they were made.

96. Plex's material misrepresentations and omissions were made in connection with a tender offer.

## COUNT III
### Fraud

97. Each of the foregoing paragraphs are incorporated herein as if fully restated.

98. Plex made material misrepresentations and omissions within its tender offer when representing the company's valuation of approximately $750 million and that each share of common stock was worth $3.21.

99. Plex made additional material misstatements and omissions in representing the company was not the subject of any acquisition offers and was not negotiating further investment.

100. These representations were false.

101. Plex made the aforementioned misstatements and omissions, they knew them to be false or, in the alternative, were made recklessly without any knowledge of its truth and as a positive assertion.

102. Plex made these statements with the intent that stockholders, including Plaintiffs, would act upon these statements by choosing to sell their shares of stock back to Plex.

103. Plaintiffs relied upon Plex's misrepresentations when electing to participate in Plex's March 2021 tender offer by selling their shares back to Plex.

104. Plaintiffs suffered economic loss as a result of Plex's material misrepresentations and omissions.

## COUNT IV
## Fraud in the Inducement

105. Each of the foregoing paragraphs are incorporated herein as if fully restated.

106. Plex made material misrepresentations and omissions within its tender offer when representing the company's valuation of approximately $750 million and that each share of common stock was worth $3.21.

107. Plex made additional material misstatements and omissions in representing the company was not the subject of any acquisition offers and was not negotiating further investment.

108. Plex made the aforementioned material misrepresentations and omissions with knowledge that such misrepresentations and omissions were false and misleading.

109. Plex made the aforementioned material misrepresentations and omissions with the intent and reasonable expectation that shareholders would act upon them.

110. Plex made additional representations and omissions expressly targeted at convincing shareholders not to conduct independent research into the value of their shares relative to the $3.21 per share offered via the tender offer.

111. Plex's material misrepresentations and omissions were made with the intent that shareholders, including Plaintiffs, would and could rely upon them.

112. Plaintiff shareholders relied upon the material misrepresentations and omissions contained within Plex's 2021 tender offer and suffered economic damages and losses as a result.

## COUNT V
## Negligent Misrepresentation

113. Each of the foregoing paragraphs are incorporated herein as if fully restated.

114. Plex owed shareholders a duty of care to refrain from making misrepresentations and omissions within their tender offer.

115. Plex made material misrepresentations and omissions of material facts within its March 2021 tender offer when representing the company's valuation and indicating the company was not the subject of any acquisition offers and was not negotiating further investment.

116. At all times relevant hereto, Plex did not have reasonable grounds to believe its statements about the company's valuation, potential acquisition or additional investment were true.

117. Plex's material misrepresentations and omissions were made without reasonable care as to their truth or falsity.

118. Plex's misstatements and omissions of material facts were made with the intent to induce Plaintiffs reliance upon the same.

119. Plaintiff shareholders' reliance on Plex's material misrepresentations and omissions contained within the 2021 tender offer was reasonable and justified.

120. Plaintiffs suffered economic harms and financial losses as a result of their reliance upon Plex's material misrepresentations and omissions.

## COUNT VI
### Fraud In the Inducement

121. Each of the foregoing paragraphs are incorporated herein as if fully restated.

122. Plex made material misrepresentations and omissions of material facts within its March 2021 tender offer when representing the company's valuation and indicating the company was not the subject of any acquisition offers and was not negotiating further investment.

123. Plex's aforementioned misrepresentations and omissions were made with knowledge they were false and misleading.

124. Plaintiffs justifiably relied on Plex's misrepresentations and omissions when choosing to accept the tender offer and sell their shares of Plex common stock back to Plex.

125. Plaintiffs suffered economic harms and financial losses as a result of their reliance upon Plex's material misrepresentations and omissions. Had Plaintiffs chosen to decline the tender offer and sold their shares of Plex common stock in conjunction with Rockwell's acquisition, Plaintiffs would have collectively received more than $4 million in additional profits.

### COUNT VII

**Breach of Contract**

126. Each of the foregoing paragraphs are incorporated herein as if fully restated.

127. Each Plaintiffs' acceptance of Plex's tender offer created a binding contract.[9]

128. Plaintiffs performed under the contract by tendering their shares of common stock to Plex.

129. Plex breached its contract with Plaintiffs by disregarding the warranties and representations included therein. The tender offer included a warrant that Plex was "not the subject of any acquisition offers" and was "not seeking or negotiating for further investment."

130. Plaintiffs suffered damages as a result of Plex's breach since their reliance on Plex's representations and warranties induced them to accept the tender offer.

### COUNT VIII
**Unjust Enrichment**

131. Each of the foregoing paragraphs are incorporated herein as if fully restated.

---

[9] See: *Exhibit A: Letter of Transmittal*. The attached copy is an exemplar as each Plaintiff executed an identical document. Personal banking information has been redacted.

132. Plex has received a financial benefit from Plaintiffs selling back shares of common stock to the company at an artificially low price due to a fraudulent tender offer.

133. Plex induced Plaintiffs to sell back shares of common stock to the company via material misrepresentations and omissions.

134. Plex's retention of any financial benefit gained from Plaintiffs' sale of common stock during the 2021 tender offer is unjust and inequitable to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, David Michaud, Timothy Burke, James Domsic, Patrick Fetterman, William Haslinger, Robert Isenberg, Karen Sandy, Thomas Schulte, Melville Smith, and Mark G. Stobbelaar, by and through their attorneys, Maddin Hauser Roth & Heller, P.C. and Hart, McLaughlin & Eldridge, LLC, respectfully request this Court enter an Order granting the following relief against Defendants, Plex Systems, Inc. and Plex Systems Holdings, Inc.:

A. Awarding Plaintiffs any and all damages proven at trial;

B. Awarding Plaintiffs restitution;

C. Awarding recission of Plaintiffs' sale of common stock to Plex;

D. Awarding Plaintiffs their reasonable attorneys' fees and litigation costs;

E. The creation of a constructive trust to impound the $35 million in funds held back for payment and resolution of Plaintiffs' claims;

F. Awarding such other and further relief as the Court deems reasonable and just.

Dated: January 13, 2022                                                    Respectfully submitted,


                                                                                          /s/      Brian H. Eldridge

Brian H. Eldridge
Steven A. Hart (*pro hac vice* application forthcoming)
Robert J. McLaughlin (*pro hac vice* application forthcoming)
Jack B. Prior (*pro hac vice* application forthcoming)
Timothy J. Keiser (*pro hac vice* application forthcoming)
**HART McLAUGHLIN & ELDRIDGE, LLC**
22 West Washington St. Suite 1600
Chicago, Illinois 60602
Tel:    (312) 955-0545
Fax:    (312) 971-9243
beldridge@hmelegal.com
shart@hmelegal.com
rmclaughlin@hmelegal.com
jprior@hmelegal.com
tkeiser@hmelegal.com

David E. Hart
**MADDIN HAUSER ROTH & HELLER P.C.**
28400 Northwestern Highway, Suite 200
Southfield, Michigan 48034
Tel:    (248) 354-4030
Fax:    (248) 354-1422
dhart@maddinhauser.com